## Samuel N. Dodge v. Juliana Gardiner.

In the construction of a writing, the meaning of particular terms used, as "general opposition," may be sought for in the light of concomitant circumstances.

Where the "general opposition" to be made had for its object the defeating of an improvement in the city of New York, under the act of April 20, 1839 (ch. 209), and was to be resisted by a majority of the parties interested, &c., to be a successful opposition, the term "general opposition" would not embrace any litigation which was peculiar to any one or more of the essential parties, less than the whole.

Where one of the resisting parties signs a paper to pay any amount within a specified sum toward raising a larger sum as a fund to prosecute such "general opposition," and no further sum or sums are contributed toward such fund, the contract of the party does not become operative, unless the contemplated fund is raised.

THE facts of the case are sufficiently stated by DENIO, Ch. J., in his opinion.

*Robert A. Dodge*, for the appellant.

*Amasa J. Parker*, for the respondent.

DENIO, Ch. J.   This action was brought to recover compensation for certain expenditures of the plaintiff, alleged to have been made at the defendant's request and for her benefit. The plaintiff and defendant were respectively owners of real estate situated on Chatham Square, and in its vicinity, in the city of New York; and portions of the lots owned by them were taken and appropriated for the purpose of extending the Bowery from Chatham Square to Franklin Square; and they were respectively assessed for benefit to the portions of their lots not appropriated.   A large number of other owners of real estate, embraced within the scope of the improvement, were similarly affected.   Commissioners of estimate and assessment had been appointed, and had made their report, and deposited the abstract of it, as required by law, about the 1st day of December, 1854; and on that day they gave notice of a motion for confirmation, to be made on the

17th day of February thereafter, in the Supreme Court. Among the items composing the aggregate amount to be assessed was the commissioners' bill of costs and expenses, amounting to $22,597. The defendant's estimate, for her land appropriated, was $62,990, and the sum assessed against her for benefit, for property not taken, was $4,847. The plaintiff, the defendant, and many other of the persons interested, were dissatisfied with the report; and the plaintiff and the defendant separately employed counsel to attend to their respective interests, and to oppose the confirmation of the report; the plaintiff's counsel being Mr. Robert Dodge, a principal witness in the case. His efforts were principally directed to opposing the taxation of the costs, and they resulted in reducing the bill by the sum of $2,500. The defendant's grievance was the alleged undervaluation of her lots taken for the proposed improvement; and to correct this, affidavits and estimates were prepared by her separate attorney, and the questions arising upon them were argued by counsel employed and paid by her. Besides these separate grounds of opposition, the defendant and many other parties, including the plaintiff, were desirous of defeating the improvement altogether. The act of April 20, 1839 (Laws of 1839, ch. 209), provides that if, upon the hearing of an application for the confirmation of the report of the commissioners of estimate and assessment, persons who appear by the report to be interested, either by assessment for benefit or award of damages, to the amount of a majority of the aggregate of all the assessments and awards, shall appear and object to further proceedings upon the report, the court shall order the same to be discontinued, and the same shall thenceforth be discontinued. The objections are to be in writing, and to be verified by the oath of the objecting party. The plaintiff undertook to defeat the improvement in that way, and for that purpose employed a person to see the parties interested and obtain their dissent in proper form; but after incurring considerable expense in that way, the effort was found ineffectual, as a majority could not be procured to object. While this attempt was being prosecuted, the defendant came to the office of the

plaintiff's counsel, and after consulting with him respecting the progress of the opposition, as a person having a common interest, she signed a paper prepared by him in these words: "Supreme Court. In the matter of the opening of the Bowery, &c. New York, January 30, 1855. Mr. Samuel N. Dodge [the plaintiff] can call upon me to the extent of four hundred dollars at any time, and in any amount, as may be required for the opposition in the above matter; the above sum of four hundred dollars being intended to be my contribution to the fund for the general opposition herein. Juliana Gardiner." The plaintiff produced and gave proof of a bill of expenses, for moneys paid to counsel and attorneys, and for copying the commissioners' abstract and procuring objectors, amounting to $469.20, the greater part of which was for the opposition to the allowance of the commissioners' bill of costs and expenses. The point principally litigated upon the evidence, on the trial before Mr. A. C. Bradley as a referee, was as to the tenor and effect of certain conversations between the defendant and Mr. Dodge, the plaintiff's counsel, prior to and at the time of signing the above mentioned paper; the plaintiff attempting to prove that the proceedings taken by him in opposing the taxation and procuring the objections, &c., were recognized by her as things done at her request and for her benefit. This she, as a witness on her own behalf, positively denied; and she further testified that the paper was signed for the purpose of making up a fund of $2,000 or $2,500, to which several persons were to contribute, for an opposition to be made on behalf of a majority of the parties affected, to the improvement as an entirety, and to prevent its being consummated; it being contemplated, according to some of the witnesses, to take the questions to the Court of Appeals. No other parties appeared to have signed, or in any way to have entered into, similar undertakings, though it was contemplated that the plaintiff, whose interest was less than the defendant's, should contribute to the amount of one hundred dollars.

The plaintiff claimed to recover against the defendant $400 of the $469.20, and interest.

The referee reported in favor of the defendant. His conclusions of fact upon the evidence were, in addition to matters not disputed, as follows: 1. That the opposition to the taxation of the costs was undertaken and conducted by the plaintiff on his own behalf, and by means of his own attorney and counsel, and not at the instance or request of the defendant. 2. That the canvassing to obtain objectors was done by the plaintiff or his agents, on his own motion, and not at the instance and request of the defendant, and that the defendant became an objecting party at the plaintiff's request. 3. That having failed to obtain the requisite majority of objecting parties, the plaintiff did not make any objection to the confirmation of the commissioners' report, other than such objections as were connected with the question of the taxation of the costs, and that the defendant did not object to the allowance of the costs claimed. 4. That the defendant's grievance was the alleged undervaluation of her real estate appropriated, and that she employed and paid counsel of her own to present her objections in that respect to the court. 5. That the paper signed by the defendant was executed during the pendency of the several forms of opposition above mentioned, and before the decision of the court upon them; and that, on the occasion of its execution, the plaintiff's counsel stated to the defendant, in substance, that measures were on foot to produce a general opposition to the confirmation of the report, and, for that purpose, a sum of $2,000, or $2,500, would be necessary, of which the plaintiff would subscribe $100, and other parties interested would probably subscribe liberally; "that the plaintiff was then fighting against the costs single-handed, and urged her to contribute to the expenses of a concerted opposition;" that the defendant signed the paper in order to contribute to a fund for a general opposition, in concert with the other parties objecting, and not for the purpose of defraying the whole or any part of plaintiff's expenses in the acts or proceedings by him instituted as above stated; that neither the plaintiff nor any other party subscribed any sum, and that no general opposition was made, and the whole aim and purpose of the defendant's subscription was conse-

quently defeated. 6. That by far the greater portion of the bill of $469.20 was incurred by the plaintiff in opposing the taxation of costs, a measure to which the defendant objected.

As matter of law, the referee decided that the written instrument was without consideration, and that there was nothing in the pleadings and proofs to entitle the plaintiff to recover. He accordingly decided in favor of the defendant. The plaintiff excepted on all the points stated.

A considerable part of the printed argument submitted on behalf of the plaintiff, who appeals from this judgment, is directed to an attempt to show that the conclusions of the referee were erroneous in matters of fact; but it is obvious that we must consider the case as though they were accurate deductions from the evidence; and I see no reason to doubt their substantial correctness, if we were reviewing the case upon the evidence.

The principal, if not the only, question in the case, as now presented, arises upon the construction of the paper. That must be judged of by its terms, though the concomitant circumstances may be looked at in fixing the meaning of its language. What was the meaning of the "general opposition" mentioned in it? It would not, of course, embrace any litigation which was peculiar to any one or more, less than the whole, of the parties; and this is not contended. It is said that it indicated some system of opposition which should look to defeating the improvement altogether. It no doubt embraced this; but it is not clear to my mind that it did not also include any species of opposition which, though it did not put an end to the proceeding, would, if successful, reduce the burden upon the several parties assessed. The effort to reduce the costs was of that character, and would, if successful, and so far as it was successful, have that tendency. The fact found, that, in her oral communications, the defendant expressed herself opposed to that form of opposition, does not seem to me an answer to that view. It had been adopted and prosecuted by the plaintiff, with her knowledge. It falls within the meaning of a general opposition, as I have inter-

preted it, and I think is embraced within the purposes of the fund which was to be raised. It is implied by the instrument that the plaintiff was to judge of the manner of conducting the opposition, so that it should be for general and not for separate benefit. The obtaining the written objections of parties who were disposed to object, was clearly within the intention of the paper. It was not limited to collecting the names of the parties who were to join in the opposition; for if the requisite amount of objecting interests had been procured, that would itself have defeated the improvement, and nothing further need then be done.

But I am of opinion that the undertaking never became an operative contract, for the reason that no such fund as was contemplated by it was ever raised. The paper clearly implies that the defendant was to be one of several contributors to a fund of a larger amount than the defendant's contribution. Parol evidence was admissible to show the purposes of that fund, and, in a general way, the amount which it was expected would be needed, and the parties who were expected to contribute; and there was no objection to the evidence given on these points. The defendant was not to pay individually the plaintiff's expenses of the opposition which he was conducting, but was only to be one of the contributing parties among those who had similar interests, and they were to join in making up the expected fund. I do not say that it was necessary for all the dissatisfied parties to have become bound to contribute. If any others had entered into obligations like that of the defendant, it might then have been a question whether the combination had become sufficiently extensive to satisfy the terms and intention of the defendant's undertaking. But when it was found that no one else joined in raising the contemplated fund, and that no such fund was ever provided for, it is demonstrated that her promise never became operative. The four hundred dollars mentioned in the paper were inserted as a limit beyond which she should not be obliged to pay, and not as an absolute sum to which she bound herself. It is upon this ground, namely, that the obligation was inchoate, and contemplated further similar

engagements by other parties, in order to become operative, which were never obtained, that I am for affirming the judgment entered upon the referee's report.

HOGEBOOM, J. This action is brought to recover $400 upon an instrument signed by the defendant, agreeing to pay that sum to the plaintiff as her contribution to the fund for the *general opposition* to the confirmation of the report of the commissioners of estimate and assessment, in the matter of the opening of the Bowery in the city of New York. The defense is that no such opposition was made, no fund contributed for that purpose, and hence, that no liability was incurred by the defendant. This defense is sustained both in regard to the *facts* and the law of the case by the referee, and by the Supreme Court. The referee finds that there was opposition to the confirmation of the report of the commissioners, both on the part of the plaintiff and of the defendant, but separately and not jointly, and at their individual expense and for their individual benefit, and not by way of general opposition in behalf of property holders associated for the purpose of making such opposition. These facts are not open to controversy here, and I think dispose of the case adversely to the plaintiff. The instrument prosecuted is not a promissory note, does not express or import a consideration on its face without the aid of extrinsic evidence, and such evidence is not produced. I think there is an insuperable barrier to the plaintiff's recovery in the conclusions to which the referee has arrived on the questions of fact. I concur in the reasons presented in the opinion of Mr. Justice BROWN, in the Supreme Court, for the affirmance of the judgment, and do not deem it necessary to add anything further in support of his conclusions.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.